UNITED STATES of America,
Plaintiff–Appellee,

v.

Rudy TORRES, Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Theodore VICKERS,
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Mary TORRES, Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Ralph Richard VICKERS,
Defendant–Appellant
(Two Cases).

Nos. 89–30006, 89–30013, 89–30016,
89–30019 and 89–30020.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 11, 1990.

Decided June 29, 1990.

As Amended Aug. 2, 1990.

Richard B. Kayne, Kayne & Kitching, Spokane, Wash., for defendant-appellant Ralph Richard Vickers.

Mark D. Watson, Meyer & Fleugge, Yakima, Wash., for defendant-appellant Rudy Torres.

Scott A. Bruns, Dohn, Talbott, Simpson, Gibson & Davis, Yakima, Wash., for defendant-appellant Mary Torres.

Donald E. Kresse, Jr., Asst. U.S. Atty., Yakima, Wash., for plaintiff-appellee.

Before WALLACE, HALL and WIGGINS, Circuit Judges.

WIGGINS, Circuit Judge:

This opinion consolidates the appeals brought by Rudy Torres, Mary Torres, Ralph Vickers and Theodore Vickers to their convictions in, respectively, *United States v. Torres*, No. 89–30006, (*Torres I*), *United States v. Torres*, No. 89–30016 (*Torres II*); *United States v. Vickers*, No. 89–30019 (*Vickers I*); and *United States v. Vickers*, No. 89–30013 (*Vickers II*). All the appellants contend that the district court should have suppressed the evidence obtained through a wire intercept because the application and affidavit submitted to obtain the wire intercept order, and the procedures used during wire interception, failed to meet statutory and constitutional requirements. In addition, Rudy and Mary Torres argue that the district court erred in finding untimely their motion to dismiss. Rudy Torres separately contends that the district court wrongfully admitted hearsay testimony against him. Mary Torres contends that the district court erred in denying her motion for acquittal based on a failure of the government to authenticate evidence used against her. Theodore Vickers and Rudy and Mary Torres contend that the district court improperly sentenced them. We have jurisdiction over these timely appeals pursuant to 28 U.S.C. § 1291 (1982). We affirm in part and vacate and remand in part.

Hugh M. Spall, Ellensburg, Wash., for defendant-appellant Theodore Vickers.

## I. FACTS

■ The Drug Enforcement Agency (DEA) began an investigation of Ralph Richard Vickers and Richard Allison on March 10, 1987 after suspecting that Vickers and Allison operated a drug distribution ring. Allison lived in a house located on property owned by Vickers. On June 4, 1987, the DEA installed a pen register[1] pursuant to court order on Allison's telephone. That pen register revealed that 28 calls were made from Allison's phone to Ralph Vickers' phone during a twenty-five day period. On June 29, 1987, the DEA installed a pen register on Ralph Vickers' telephone. In the next twenty-five day period that pen register revealed that: 1) 42 calls were made from Ralph Vickers' phone to Allison's pager; 2) 70 calls were made from Ralph Vickers' phone to a New York hotel; and 3) 94 calls were made from Ralph Vickers' phone to suspected coconspirators.

The DEA also introduced undercover agents to Ralph Vickers' drug distribution ring. On September 23, 1987, Ralph Vickers sold cocaine to a DEA undercover agent, Greg Phillips. Ralph Vickers again sold cocaine to Agent Phillips on October 29, 1987.

The DEA, despite information gained from surveillance of the Allison residence, Agent Phillips, and three confidential informants, could not identify all the sources of Ralph Vickers' cocaine supply, all of Ralph Vickers' major customers, all his coconspirators, and the location of his assets.

On September 24, 1987, the DEA sought an order from the Attorney General approving an application to the district court to intercept telephone communications to and from Ralph Vickers' residence. After receiving such approval from a Deputy Assistant Attorney General, the DEA applied to the district court for an order to intercept such wire communications on Ralph

Vickers' telephone line. The DEA's affidavit in support of this application stated that other methods of investigating the drug ring would not be as effective because continuous physical surveillance and searches or grand jury investigations would alert the coconspirators to the DEA's investigation, while undercover agents would not be able to contact sources of supply. The district court issued the wire intercept order on November 18, 1987. Interception of wire communications began soon thereafter and continued until December 2, 1987. The DEA intercepted 1,693 calls.

During a call monitored on November 27, 1987, Theodore Vickers, Ralph Vickers' brother, ordered an ounce of marijuana from Ralph Vickers. During a call monitored on November 29, 1987, Mary Torres described to Ralph Vickers the details of the importation of drugs by her husband, Rudy Torres, from Mexico.

On February 11, 1988, the government obtained indictments against Ralph Vickers, Theodore Vickers, Mary Torres, and Rudy Torres. Appellants moved to suppress those conversations on the ground that the application had not been properly authorized by the Attorney General. The district court denied their motions on July 13, 1988. Appellants then moved to suppress the conversations on the grounds that the affidavit failed to show sufficient necessity and that the DEA failed to minimize the interception of telephone conversations not related to its investigation. The district court denied their motions on August 8, 1988.

On October 18, 1988, Rudy and Mary Torres moved to dismiss their indictments on the ground that the intercepted conversations implicating them were outside the scope of the wire intercept order and were not subsequently authorized as required by 18 U.S.C. § 2517(5) (1988). The district court denied this motion on the grounds

---

1. A pen register records all numbers dialed from a specific line. It does not identify the telephone numbers from which incoming calls originated, reveal whether any call was completed, or record telephone conversations. *United States v. Giordano*, 416 U.S. 505, 508 n. 1, 94 S.Ct. 1820, 1823 n. 1, 40 L.Ed.2d 341 (1974).

The stringent restrictions which exist in the use of wire intercepts as set forth in Title III of the Omnibus Crime Control and Safe Streets Act do not apply to the use of pen registers. *United States v. New York Telephone Co.*, 434 U.S. 159, 165–68, 98 S.Ct. 364, 368–70, 54 L.Ed.2d 376 (1977).

that the conversations were not outside the scope of the order, the government had proceeded in good faith, and that the Torreses' motion was untimely. At trial, the Torreses unsuccessfully renewed their challenge to the use of conversations obtained by the wire intercept.

During trial, the district court admitted testimony, over objection, of Allison and Mark Horton regarding statements made by Ralph Vickers implicating Rudy Torres in the distribution of drugs. On November 15, 1989, Mary Torres moved for acquittal on the grounds that the government failed to authenticate properly evidence admitted against her. The district court denied that motion.

Rudy Torres was convicted of one count of conspiracy to import a controlled substance and nine counts of use of a communication facility in furtherance of a narcotics felony. The district court sentenced Rudy Torres to five years for the conspiracy charge and four years for each of the communications charges, sentences to run concurrently. Mary Torres was convicted of one count of conspiracy to import a controlled substance and five counts of use of a communication facility in furtherance of a narcotics felony. The district court sentenced her to three years for the conspiracy charge and three years for each of the communications charges, sentences to run concurrently.

Ralph Vickers pleaded guilty to one count of conspiracy to manufacture a controlled substance. The district court sentenced him to twelve years and fined him $50,050. On November 18, Theodore Vickers pleaded guilty to one count of possession of marijuana. The district court sentenced him to two years and fined him $5,050.

## II. DISCUSSION

A. ISSUES RAISED BY *TORRES I* AND *II* AND *VICKERS I* AND *II*: THE LEGALITY OF THE WIRE INTERCEPT

Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2511–2521 (1988), prohibits willful interception or disclosure of telephone conversations except as provided under 18 U.S.C. §§ 2516–2519. Appellants argue that the DEA's alleged failure to: 1) seek proper authorization for its wire intercept application; 2) prove necessity for the wire intercept; and 3) minimize the wire interception requires suppression of the intercepted conversations, *see* 18 U.S.C. § 2518(10)(a), or dismissal of their indictments.

### 1. Authorization

■ We review de novo whether the DEA obtained proper authorization to apply for an intercept order. *See United States v. Camp*, 723 F.2d 741 (9th Cir.1984) (implying a de novo standard).

■ Section 2516(1) of Title III provides that: "any Deputy Assistant Attorney General in the Criminal Division *specially designated by the Attorney General*, may authorize an application to a Federal judge [for a wire intercept order]...." 18 U.S.C. § 2516(1) (emphasis added). In the instant case, Joe D. Whitley, a Deputy Assistant Attorney General for the Criminal Division of the Department of Justice, authorized the application for the order. Prior to Whitley's authorization, then Attorney General Edwin Meese issued an order which stated that "any Deputy Assistant Attorney General of the Criminal Division" may authorize applications for wire intercept orders. Whitley was one of four Deputy Assistant Attorneys General. Appellants contend that the Attorney General's order did not "specially designate" Whitley because that order did not specifically mention Whitley by name.

■ Whitley was specially designated within the meaning of section 2516(1). An Attorney General may "specially designate" an officer pursuant to section 2516(1) by job title rather than name. *Camp*, 723 F.2d at 744. Although *Camp* decided only whether a special designation order may refer by job title to one person, not a group of persons, nothing in *Camp* suggests that a special designation by job title is invalid if more than one person has that job. Because Title III's policy of political accounta-

bility is not founded on special designation, *id.*, we hold that it is sufficient that the special designation order clearly identifies and evinces an intent to designate the authorizing officer. In this case it clearly does.

■ Appellants also contend that Edwin Meese's signature on his designation order is not genuine. However, appellants introduced no evidence to substantiate this allegation in the district court. Thus they have failed to meet their burden of production. *See United States v. Jabara*, 618 F.2d 1319, 1327 (9th Cir.) (defendant has initial burden of establishing a prima facie showing that government failed to meet a condition precedent to issuance of wiretap), *cert. denied*, 446 U.S. 987, 100 S.Ct. 2973, 64 L.Ed.2d 845 (1980).

2. Necessity

■ We review the district court's determination that sufficient necessity existed to issue a wire intercept for abuse of discretion. *United States v. Brone*, 792 F.2d 1504, 1506 (9th Cir.1986).

■ The DEA states in its affidavit accompanying its application for the intercept order that interception was necessary to "identify, investigate, and prosecute ... the *sources of supply, co-distributors and major customers* of Ralph R. Vickers, Sherrie Vickers, and Robert Allison's cocaine distribution organization" and to "[locate and identify] assets obtained from narcotics trafficking." (emphasis added).

■ Prior to issuing a valid wire intercept, the district court must find that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." 28 U.S.C. § 2518(3)(c). Although generally a wire intercept should not constitute the first step in an investigation, *see Brone*, 792 F.2d at 1506, the

government need not exhaust every conceivable investigative technique in order to show necessity. *Id.* Appellants contend that the success of normal investigative techniques [2] and the presence of conclusory statements in the affidavit indicates that sufficient necessity did not exist for a wire intercept order.

We find that the district court did not abuse its discretion in finding that wire intercepts were necessary to identify Vickers' suppliers, major buyers, and assets. We have consistently upheld findings of necessity where traditional investigative techniques lead only to apprehension and prosecution of the main conspirators, but not to apprehension and prosecution of suppliers, major buyers or other satellite conspirators. *See United States v. Carneiro*, 861 F.2d 1171, 1177–78 (9th Cir.1988) (necessity predicated on failure to discover source of cocaine, failure of pen register to establish identity of the person called, and fear that investigative grand jury would alert suspects to the investigation); *Brone*, 792 F.2d at 1506 (necessity predicated on wary suspects, failure of informants and undercover agents to uncover sources of narcotics, and failure of pen register to disclose nature of business transacted over the phone).

Appellants have introduced no evidence to show that the district court clearly erred in finding the following facts: 1) continued surveillance was not feasible due to appellants' use of countersurveillance; 2) the use of a search warrant or grand jury proceeding would alert appellants of an ongoing investigation; 3) informants and undercover agents could not determine the source of Vickers' drugs. Although the government did have anonymous tips naming individuals as suppliers and major buyers of Vickers' drug ring, those tips alone would not constitute sufficient evidence to sustain a conviction. Given these facts, the

**2.** Prior to applying for a wire intercept, the DEA ascertained that: 1) Ralph Vickers sold cocaine to a DEA agent; 2) the Vickers drug conspiracy trusted the undercover agent; 3) Vickers called telephone numbers of suspected cocaine dealers. The DEA had 1) identified major customers of Vickers; 2) received tips which suggested

that Albaro Haro and Ruben Haro supplied Vickers with cocaine; 3) received tips which suggested that Dan Wesley Johnson and Sean Blake Gebhardt distributed drugs for Vickers, and 4) identified property owned by Vickers in Yakima, Washington valued at $400,000.

district court did not abuse its discretion in finding necessity.

■ The presence of conclusory language[3] in the affidavit will not negate a finding of necessity if the affidavit, as a whole, alleges sufficient facts demonstrating necessity. *See, e.g., Carneiro,* 861 F.2d at 1177 (affidavit met necessity requirement even though it included conclusory statement about difficulties in recruiting informants); *Brone,* 792 F.2d at 1506 (affidavit met necessity requirement even though it included conclusory and unsupported statements about difficulties of prosecuting this particular case).

3. Minimization

■ We review de novo whether the DEA properly minimized the monitoring of phone conversations not relevant to its investigation as required by 18 U.S.C. § 2518(5). *See United States v. Abascal,* 564 F.2d 821, 827 (9th Cir.1977), *cert. denied,* 435 U.S. 953, 98 S.Ct. 1583, 55 L.Ed.2d 804 (1978) (implying a de novo standard).

■ Pursuant to section 2518(5), the government must conduct wire intercepts so as to "minimize the interception of communications not otherwise subject to interception." 18 U.S.C. § 2518(5). The government has the burden to show proper minimization. *United States v. Rizzo,* 491 F.2d 215, 217 n. 7 (2d Cir.), *cert. denied,* 416 U.S. 990, 94 S.Ct. 2399, 40 L.Ed.2d 769 (1974). Appellants contend that the DEA's failure to minimize properly is demonstrated by: 1) inadequate supervision during interception and inadequate minimization training; and 2) the interception of unminimized calls. Appellants do not challenge the introduction of specific conversations into evidence on the ground that monitoring officers should have minimized specific conversations. Thus we only examine whether the government has shown a prima facie case of compliance with the minimization requirement. *See United States v. Turner,* 528 F.2d 143, 157 (9th Cir.1975),

*cert. denied,* 423 U.S. 996, 96 S.Ct. 426, 46 L.Ed.2d 371 (1976). The government has done so.

■ Minimization requires that the government adopt reasonable measures to reduce the interception of conversations unrelated to the criminal activity under investigation to a practical minimum while permitting the government to pursue legitimate investigation. *See id.* at 156. The standard for minimization is reasonableness. *Abascal,* 564 F.2d at 827.

The DEA adopted reasonable procedures to assure compliance with the minimization requirement. Monitoring agents were instructed on the requirements and need for minimization. They were also required to read and sign a typed copy of minimization guidelines. Furthermore, a DEA agent and an Assistant United States Attorney made themselves available on a twenty-four hour basis for consultation. Testimony at the suppression hearing reveals that monitoring agents frequently questioned the on-duty DEA agent on proper minimization procedures.

■ The mere interception of calls unrelated to the drug conspiracy does not indicate a failure to meet the minimization requirement. *See Scott v. United States,* 436 U.S. 128, 140–41, 98 S.Ct. 1717, 1724–25, 56 L.Ed.2d 168 (1978). Because the record does not indicate that the DEA intercepted a "clear pattern of any substantial number of innocent calls," *see United States v. Chavez,* 533 F.2d 491, 495 (9th Cir.) *cert. denied,* 426 U.S. 911, 96 S.Ct. 2237, 48 L.Ed.2d 837 (1976), we find the interception was properly minimized.

■ In this case, the DEA intercepted 1052 completed conversations. Of these, the government failed to minimize only a handful of calls. The DEA agents failed to minimize six personal calls between Sherrie Vickers and Allison, a call in which Ralph Vickers discussed his sex life, and a call in which Ralph's son David recounted his past evening spent with friends. The intercep-

---

3. For example, the affidavit states: "Local authorities have been unable to successfully investigate and prosecute Ralph R. Vickers ... [be-

cause] the scale of Ralph R. Vickers' organization is beyond the scope of any investigation ever conducted by local authorities."

tion of these calls was reasonable. Where the intercepted phone line is located in the residence of the head of the drug distribution conspiracy, monitoring agents may intercept a broader range of calls. *See Scott,* 436 U.S. at 140, 98 S.Ct. at 1724 (broad interception of calls at residence of suspected drug ring leader may be reasonable). Furthermore, although Allison and Sherrie Vickers spoke about their ongoing extramarital affair, they were also principals in the drug distribution ring. Where, as here, the wire intercept concerns a drug ring, the need to allow latitude to monitoring agents is paramount. *Id; see also Uribe,* 890 F.2d 554, 557–58. A conversation between principals that begins innocuously may become drug-related. *See Chavez,* 533 F.2d at 494. The fact that the FBI overheard a few innocent conversations does not render its minimization efforts unreasonable. *Id.* at 557–58.

**B. ISSUES RAISED BY *TORRES I* AND II**

 The district court denied the Torreses' motion to dismiss the indictment against them due to an alleged violation of section 2517(5) on the grounds that: 1) the Torreses' motion was untimely; and 2) no violation of section 2517(5) occurred. Section 2517(5) prohibits use of communications relating to offenses other than those specified in the order of authorization or approval unless the officer has obtained subsequent authorization. We find that the district did not abuse its discretion in finding untimely the Torreses' motion to dismiss pursuant to section 2517(5). On March 18, 1988, the district court set July 21, 1988 as the hearing date for motions to suppress the use of evidence obtained through the wire intercept. The Torreses filed their motion on October 18, 1988.

The Torreses contend that section 2518(10)(a), pursuant to which they filed their motion to dismiss, contains no specific time limit and therefore permits them to move for suppression any time before trial. The Torreses' argument has no merit. A motion to suppress pursuant to section 2518(10)(a) is analogous to a motion to suppress pursuant to Federal Rule of Criminal Procedure 41(f). *United States v. Sisca,* 503 F.2d 1337, 1349 (2d Cir.) *cert. denied,* 419 U.S. 1008, 95 S.Ct. 328, 42 L.Ed.2d 283 (1974). The district court sets the time for the making of pretrial motions or requests. Fed.R.Crim.P. 12(c). An unjustified failure to make a timely motion to suppress pursuant to Rule 41(f) and Rule 12 constitutes a waiver of that right. *Sisca,* 503 F.2d at 1349. Although the government provided the Torreses with the application, affidavit and order authorizing the wire intercept over five months before the hearing date, they provide no valid excuse for their failure to file their motion in a timely fashion.

**C. *TORRES I:* The Admission of Testimony by Robert Allison and Mark Horton**

 We review a district court's decision to admit evidence for abuse of discretion. *United States v. Sanchez–Lopez,* 879 F.2d 541, 553 (9th Cir.1989).

 Rudy Torres contends that the testimony of Horton and Allison was inadmissible hearsay because the government failed first to establish the existence of a conspiracy involving the Torreses and Ralph Vickers. At trial, the district court admitted testimony over objection by Horton and Allison regarding statements made by Ralph Vickers which implicated Rudy Torres in a conspiracy to import drugs from Mexico. The district court ruled that the testimony was admissible as containing statements by a coconspirator.

 Federal Rule of Evidence 801(d)(2)(E) provides that "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy" is not hearsay. We review the district court's finding that: 1) there was a conspiracy and 2) the statement was made "during" and "in furtherance of" the conspiracy for clear error. *See United States v. Zavala–Serra,* 853 F.2d 1512, 1515 (9th Cir.1988). In other words, we cannot upset such findings unless the district court "could not reasonably have come to that conclusion." *United States v. Echeverry,* 759 F.2d 1451, 1457 (9th Cir.1985).

In determining whether a conspiracy exists, the district court may consider the coconspirator's statements themselves. *Id.* However, those statements alone may not conclusively establish the existence of that conspiracy. *United States v. Silverman,* 861 F.2d 571, 577 (9th Cir.1988). To determine whether evidence supports the existence of a conspiracy, relevant areas of inquiry include the nature of the scheme; the identity of the participants; the quality, frequency and duration of each conspirator's transactions; and the commonality of times and goals. *United States v. Arbelaez,* 719 F.2d 1453, 1458 (9th Cir.1983), *cert. denied,* 467 U.S. 1255, 104 S.Ct. 3543, 82 L.Ed.2d 847 (1984).

In the instant case, Ralph Vicker's statements, recounted by Allison and Horton, help establish Rudy Torres' involvement in the drug conspiracy. Their testimony reveals that Rudy Torres had planned to go to Mexico and bring back marijuana, that Ralph Vickers funded that trip, and that Ralph Vickers sent guns to Rudy Torres in Mexico to trade for the marijuana.

The conversation seized through the wire intercept confirmed Rudy Torres' role in importation of drugs. The government also introduced evidence gained from a pen register which revealed that calls were made from Ralph Vickers' line to Rudy Torres' telephone line, and Western Union records which indicated that Ralph Vickers made payments to Rudy Torres. Taken together, this evidence establishes the existence of, and Rudy Torres' involvement in, the conspiracy by a preponderance of the evidence. *See Silverman,* 861 F.2d at 578–79.

D. *TORRES II:* The District Court's Denial of Mary Torres' Motion for Acquittal

Mary Torres contends that the district court should have granted her motion for acquittal based upon the alleged failure of the DEA to establish that the voice heard on the tapes played to the jury belonged to her.

The government must introduce evidence sufficient to support a finding that the voice on the tape recording is the defendant's voice. Fed.R.Evid. 901(b)(5). Testimony of voice recognition constitutes sufficient authentication. *United States v. Cox,* 449 F.2d 679, 690 (10th Cir.1971), *cert. denied,* 406 U.S. 934, 92 S.Ct. 1783, 32 L.Ed.2d 136 (1972). In this case, a DEA agent testified that he spoke with Mary Torres and recognized her voice on the tapes. Furthermore, on the tapes Mary Torres was referred to as "Mary." Mary Torres was the only person at Vickers' residence who responded to the name "Mary." The government properly authenticated the tapes. The district court, therefore, properly denied Mary Torres' motion for acquittal.

E. SENTENCING GUIDELINES ISSUES

The Torreses and the government agree that we should vacate the sentences imposed upon the Torreses.

The sentences imposed upon the Torreses exceed the sentences formulated by the Guidelines. The Sentencing Guidelines require the district court to state the specific reasons for imposing sentences which exceed the sentences formulated by the Guidelines. *United States v. Lira–Barraza,* 897 F.2d 981, 983 (9th Cir.1990). The district court did not do so for the Torreses. Therefore, we vacate the Torreses' sentence and remand for resentencing. *See* Fed.R.Crim.P. 35(a).

### III. CONCLUSION

We uphold the use of evidence gained through the wire intercept order against Ralph and Theodore Vickers. We affirm the district court's denial of the Torreses' motion to dismiss. We find no error in the district court's admission of Allison and Horton's testimony against Rudy Torres. We affirm the denial of Mary Torres' motion for acquittal. We vacate the sentences imposed upon the Torreses and remand for resentencing.

AFFIRMED in part, VACATED and REMANDED in part.