988 F.2d 123
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Peggy Jean deLAY, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Paul Joseph deLAY, Defendant-Appellant.
 Nos. 92-30090, 92-30091.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 5, 1993.*
Decided March 10, 1993.
 
 Appeal from the United States District Court for the District of Oregon, No. CR-90-10-2-HJF; Helen J. Frye, District Judge, Presiding.
 D.Or.
 AFFIRMED.
 Before TANG, POOLE and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 In these consolidated cases, Paul Joseph deLay and Peggy Jean deLay ("deLays") entered conditional pleas and were convicted for conspiracy to possess with intent to distribute and to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. Pursuant to their conditional pleas, the deLays now appeal their convictions arguing that the district court erred in denying their motion to suppress evidence obtained through a wiretap placed on Lonnie Lee Baker. We have jurisdiction under 28 U.S.C. § 1291. We affirm.
 
 I.
 
 3
 The deLays have standing under 18 U.S.C. § 2518(10)(a)[1] to argue that their suppression motion should have been granted because sufficient necessity did not exist to authorize the wiretap on Baker.[2]
 
 Under § 2518(1)(c):
 
 4
 Each application for an order authorizing or approving the interception of a wire, oral, or electronic communication under this chapter shall be made in writing upon oath or affirmation to a judge of competent jurisdiction and shall state the applicant's authority to make such application. Each application shall include the following information:
 
 
 5
 * * *
 
 
 6
 (c) a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous....
 
 
 7
 Although we review de novo whether the government submitted "a full and complete statement" in accordance with 18 U.S.C. § 2518(1)(c), we review for an abuse of discretion a district court's determination that sufficient necessity existed to authorize a wiretap. United States v. Brown, 761 F.2d 1272, 1275 (9th Cir.1985).
 
 
 8
 The deLays argue that the affidavit here is similar to the affidavit in United States v. Kalustian, 529 F.2d 585 (9th Cir.1975), and as in Kalustian, the evidence should have been suppressed. We disagree.
 
 
 9
 In Kalustian, the government obtained authorization to conduct an investigation by wiretap on certain defendants for allegedly operating a bookmaking operation. The defendants argued that the district court erred in denying its suppression motion because the government's application for the wiretap failed to meet the standards under § 2518(1)(c). We determined there that the government "discarded alternative means of further investigation because 'knowledge and experience' in investigating other gambling cases convinced them that 'normal investigative procedures' were unlikely to succeed." Id. at 589. The government's affidavit did not "enlighten us as to why this gambling case presented any investigative problems which were distinguishable in nature or degree from any other gambling case." Id. Thus, we held that the government failed to submit a full and complete statement as required under § 2518(1)(c) because "[i]ts application did not adequately show why traditional investigative techniques were not sufficient in this particular case." Id. at 590.
 
 
 10
 The present case is distinguishable. Here, the Government submitted the affidavit of FBI Special Agent J. Richard Palmer. In his affidavit, Agent Palmer carefully detailed the investigation of Lonnie Lee Baker. The investigation consisted of confidential informants, cooperating witnesses, undercover agents, surveillance, and devices which track outgoing and incoming phone calls.[3] Despite these investigative techniques, the affidavit points out that the Government was unable and not likely to identify Baker's cocaine source nor identify all co-conspirators in the drug operation. We therefore find that the Government has made a full and complete statement in accordance with § 2518(1)(c).
 
 
 11
 The deLays also argue that the district court abused its discretion in determining that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(3)(c). We disagree.
 
 
 12
 Although Agent Palmer's affidavit contained some conclusory language, we held that the "[p]resence of conclusory language in the affidavit will not negate a finding of necessity if the affidavit, as a whole, alleges sufficient facts demonstrating necessity." United States v. Torres, 908 F.2d 1417, 1423 (9th Cir.), cert. denied, 111 S.Ct. 366 (1990). As mentioned earlier, the Government's investigation of Baker was not successful in identifying Baker's cocaine source nor in identifying all major players in the drug operation, and absent a wiretap, it did not appear that the Government would make such identifications. The Government supported this contention with a detailed affidavit of Agent Palmer.
 
 
 13
 "Although generally a wire intercept should not constitute the first step in an investigation, the government need not exhaust every conceivable investigative technique in order to show necessity." Id. at 1422 (internal citation omitted). Furthermore, "[w]e have consistently upheld findings of necessity where traditional investigative techniques lead only to apprehension and prosecution of the main conspirators, but not to apprehension and prosecution of suppliers, major buyers or other satellite conspirators." Id. (citation omitted). Thus, we find that the district court did not abuse its discretion in issuing an order authorizing the Government to intercept wire and electronic communications of Baker.
 
 II.
 
 14
 The deLays next argue that the district court should have granted their suppression motion because the Government failed to properly minimize the interception of non-pertinent communications as required under 18 U.S.C. § 2518(5).[4]
 
 
 15
 As to this issue, the deLays have "standing to challenge minimization only as to their own calls." United States v. Abascal, 564 F.2d 821, 827 (9th Cir.1977), cert. denied, 435 U.S. 953 (1978). Only calls that were not properly minimized will be suppressed. United States v. Cox, 462 F.2d 1293, 1301 (9th Cir.1972) ("even if the surveillance in this case did reflect a failure to minimize, it would not follow that Congress intended that as a consequence all the evidence obtained should be suppressed"), cert. denied, 417 U.S. 918 (1974).
 
 
 16
 We review de novo whether the Government properly minimized the interception of communications not otherwise subject to interception. Torres, 908 F.2d at 1423. "Minimization requires that the government adopt reasonable measures to reduce the interception of conversations unrelated to the criminal activity under investigation to a practical minimum while permitting the government to pursue legitimate investigation." Id. (citation omitted).
 
 
 17
 Here, the Government presented testimony that all personnel involved in the monitoring the wiretap on Baker were briefed as to the minimization requirements.[5] Both the order authorizing the wire intercept on Baker and a transcript of minimization requirements were posted in the monitoring room. Also, a cassette copy containing minimization information was placed in the monitoring room. The personnel monitoring the wiretap were required to read the posted documents.
 
 
 18
 The Government also testified that it intercepted approximately 23 minutes of phone conversation involving the deLays. The longest conversation lasted three minutes and three seconds, and shortest conversation lasted nine seconds. There was no pattern of innocent calls in which the Government had a duty to minimize such calls. See Abascal, 564 F.2d at 827 (once there is a pattern of innocent calls, the government must terminate interception of such calls).
 
 
 19
 Given the content and length of the conversations between Baker and the deLays, we find that the Government did not violate the minimization requirements as to those conversations. Therefore, the district court did not err in denying the deLays' suppression motion.
 
 
 20
 AFFIRMED.
 
 
 
 *
 The panel unanimously agrees that this case is appropriate for submission without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Under 18 U.S.C. § 2518(10)(a):
 Any aggrieved person ... may move to suppress the contents of any wire or oral communication intercepted pursuant to this chapter, or evidence derived therefrom, on the grounds that--
 (i) the communication was unlawfully intercepted;
 (ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or
 (iii) the interception was not made in conformity with the order of authorization or approval.
 
 
 [2]
 The rule of standing under § 2518(10)(a) is no broader than the Fourth Amendment rule of standing. United States v. Taketa, 923 F.2d 665, 675 (9th Cir.1991) (citing Alderman v. United States, 394 U.S. 165, 175 n. 9 (1969)
 Because the Government intercepted a conversation between Baker and the deLays, the deLays have standing to challenge the legality of the wiretap authorization. See United States v. King, 478 F.2d 494, 507 (1973) (holding that "a defendant may move to suppress the fruits of a wire-tap only if his privacy was actually invaded; that is, if he was a participant in an intercepted conversation, or if such conversation occurred on his premises"), cert. denied, 417 U.S. 920 (1974).
 
 
 [3]
 Pen register and trap and trace devices have been used. A pen register tracks outgoing phone calls, and a trap and trace device tracks incoming calls
 
 
 [4]
 Under 18 U.S.C. § 2518(5), "the authorization to intercept shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter."
 
 
 [5]
 Agent Palmer testified that:
 They would start the interception overhearing the conversations, if there was a conversation, and they would immediately try to determine whether or not the telephone call was related to the illegal activity which the wiretap was authorized. They would either continue to listen or they would turn off the machine if they deemed the conversation nonrelated to the illegal activity.