988 F.2d 125
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Steven K. SWINBURNE, Defendant-Appellant.
 No. 90-10492.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 9, 1993.*
Decided March 11, 1993.
 
 Appeal from the United States District Court for the District of Arizona, No. CR-88-00330-RMB, Richard M. Bilby, District Judge, Presiding.
 D.Ariz.
 AFFIRMED.
 Before GOODWIN, NOONAN and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Steven Swinburne appeals from the denial of his motion to suppress evidence obtained through the use of a judicially-approved wiretap and two subsequent extensions of the wiretap. Appellant pleaded guilty to conspiracy to possess with intent to distribute marijuana and cocaine, while reserving the right to appeal the district court's order denying the motion to suppress. See Fed.R.Crim.P. 11(a)(2). We affirm.
 
 
 3
 To obtain a wiretap, an application must include a "full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). The district court must then determine whether the application contains facts to support a finding that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(3)(c). "Taken together, §§ 2518(1)(c) and (3)(c) require a showing of necessity before a district court can issue a wiretap order." United States v. Carneiro, 861 F.2d 1171, 1176 (9th Cir.1988).
 
 
 4
 We review de novo whether a full and complete statement of the facts was submitted in compliance with 18 U.S.C. § 2518(1)(c), but we review the issuing judge's necessity determination for an abuse of discretion. United States v. Brone, 792 F.2d 1504, 1506 (9th Cir.1986). Our review of the original wiretap and its subsequent extensions indicates that the wiretaps satisfied the necessity requirement.
 
 The Original Wiretap
 
 5
 The government obtained the original wiretap to further its investigation of the drug-trafficking organization controlled by Octavio Meraz-Peru, one of appellant's co-conspirators. Appellant argues that there was insufficient necessity for the wiretap order given the government's successful use of normal investigative techniques in this case.
 
 
 6
 According to the joint affidavit filed in support of the wiretap application by the Federal Bureau of Investigation ("FBI") and the Drug Enforcement Agency ("DEA"), the government conducted a detailed investigation of the Meraz-Peru drug-trafficking organization. The agents used confidential informants, conducted physical surveillance of Meraz-Peru, attempted to infiltrate the organization in an undercover capacity, and installed a pen register and a trap and trace on Meraz-Peru's telephone and beeper numbers.[1] Through consensual monitoring, the government was able to videotape a drug transaction between Meraz-Peru and a government informant identified as "Source One." In addition, Source One corroborated the involvement of several co-conspirators.
 
 
 7
 However, the fact that the law enforcement officials enjoyed a certain degree of success employing normal investigative techniques does not indicate that a wiretap was unnecessary. United States v. Kail, 612 F.2d 443, 447 (9th Cir.1979). The agents bore the burden of demonstrating that they pursued their investigation diligently through normal methods but, nevertheless, that a wiretap was necessary to further their inquiry. They did not have to show that normal methods yielded absolutely no information regarding the suspected drug traffickers.
 
 
 8
 In United States v. Torres, 908 F.2d 1417 (9th Cir.1990), for example, law enforcement officials investigating a drug distribution network infiltrated the drug ring through undercover agents and gained information through confidential informants. Id. at 1420. Nevertheless, we upheld the issuing judge's finding of necessity because traditional investigative techniques failed to lead "to apprehension and prosecution of suppliers, major buyers or other satellite conspirators." Id. at 1423.
 
 
 9
 The law enforcement officials in the present case stated that the wiretap was necessary to identify: (1) "the illegal source of the cocaine or other controlled substances smuggled into this country and sold by Octavio Meraz Peru," (2) "the locations where the drugs were smuggled from or to," and (3) "the identities of the persons involved in, or controlling, this narcotics distribution network."[2]
 
 
 10
 The agents stated that normal investigative techniques had been unsuccessful in achieving these objectives and that other untried traditional investigative methods were unlikely to further the investigation. Id. They elected not to pursue a grand jury investigation because to do so would reveal the existence of the investigation without yielding useful information. See Carneiro, 861 F.2d at 1177. Source One was able to gain Meraz-Peru's confidence, but, according to the affidavit, "he/she to date has failed to identify the upper level network, all means, methods, and co-conspirators of Octavio Meraz Peru's narcotic activity." Although physical surveillance enabled the government to corroborate Meraz-Peru's contacts with suspected narcotics traffickers, it did not establish the purposes of these meetings.
 
 
 11
 Finally, although the pen register and trap and trace analyses established association among possible drug traffickers, they did not provide any evidence that these communications were for criminal purposes. In Carneiro, we held that necessity existed, despite the use of a pen register, because this technique does not reveal contents of the telephone conversations or establish the identity of persons called. 816 F.2d at 1177. Although the trap and trace allowed the law enforcement officials to determine the identities of the persons called, it did not reveal whether the conversations concerned drug transactions.
 
 
 12
 We find that the agents' affidavit demonstrated the necessity of a wiretap to the investigation of the sources of supply and the network of conspirators.[3]
 
 
 13
 Appellant also contends that the presence of conclusory statements in the affidavit indicates that sufficient necessity did not exist for the wiretap order. However, "[t]he presence of conclusory language in the affidavit will not negate a finding of necessity if the affidavit, as a whole, alleges sufficient facts demonstrating necessity." Torres, 908 F.2d at 1423 (footnote omitted).
 
 
 14
 We therefore find that the original wiretap order met the necessity requirements of 18 U.S.C. § 1518.
 
 The Wiretap Extensions
 
 15
 The affidavits for each of the subsequent extensions of the original wiretap order must "set[ ] forth the results thus far obtained from the interception, or a reasonable explanation for the failure to obtain such results." 18 U.S.C. § 2518(1)(f). The affidavits here noted the results achieved by the wiretaps on Meraz-Peru's telephone and beeper.
 
 
 16
 In addition, 18 U.S.C. § 2518(5) makes the necessity requirements of 18 U.S.C. § 2518(1)(c) and (3)(c) applicable to wiretap extensions. Carneiro, 861 F.2d at 1182. The affidavit for the first extension incorporated the original affidavit's statements as to the necessity of a wiretap and explained that additional time was necessary because Meraz-Peru used guarded, coded language in the monitored conversations. The affidavit for the second extension also incorporated the original affidavit's statements and explained that the first thirty-day extension did not serve its purpose because Meraz-Peru had been out of town for twenty-four days during that time period.
 
 
 17
 Appellant argues that, under Carneiro, each wiretap application standing alone must satisfy the necessity requirement and that the applications for extension failed to meet this standard due to their incorporation of the original affidavit. However, the Carneiro court did not invalidate the wiretap extension on the ground that its supporting affidavit incorporated the original affidavit's statements as to necessity. The flaw in that affidavit was that the statements taken verbatim from the original affidavit contained material misstatements and omissions. Id. at 1182-83. The court suppressed not only evidence gained from the wiretap extension but also evidence gained from the original wiretap itself. Id. In the present case, the affidavits supporting the subsequent extensions of the original wiretap do not suffer from this defect. Therefore, the wiretap extensions were valid.
 
 Conclusion
 
 18
 We uphold the use of evidence gained through the wire intercept order and its two subsequent extensions. The district court's order denying appellant's motion to suppress is AFFIRMED, and its conviction of appellant is AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a); Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 A pen register records the outgoing numbers dialed from a telephone, the time of day the numbers are called, and the duration of the calls. A trap and trace identifies the originating points of incoming calls to a telephone number
 
 
 [2]
 Appellant claims that the agents' affidavits were invalid because they "mirror verbatim the same sections provided the district court in United States of America v. Rodimero Rojas-Oquita." The framework, as well as much of the wording, of the affidavits' necessity sections is the same. This presumably reflects similarities between these two investigations. However, the affidavit in this case particularizes its statement of necessity. See E.R. at A-253, A-254 (discussion of Source One's success and Meraz-Peru's attempts to evade physical surveillance)
 
 
 [3]
 It might have been an abuse of discretion to issue a wiretap order based solely on the need to identify "the locations where the drugs were smuggled from or to." The agents disclosed that Meraz-Peru identified the smuggling route in rough detail to Source One. The affidavit contained no misrepresentation or omission, but the facts it disclosed raise a question whether normal investigative techniques might have been sufficient to investigate the drug importation route. However, we need not reach this issue because the district judge was within his discretion to find that a wiretap was necessary to identify the source of the drugs and the identities of the co-conspirators