77 F.3d 491
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Juan Demetrio VILLALPANDO, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Pedro Leon FIGUEROA, Defendant-Appellant.
 Nos. 94-50577, 94-50596.
 United States Court of Appeals, Ninth Circuit.
 Submitted Feb. 5, 1996.*
Decided Feb. 8, 1996.
 
 Before: WALLACE, Chief Judge, FERGUSON and T.G. NELSON, Circuit Judges.
 
 MEMORANDUM
 
 1
 Villalpando and Figueroa appeal from their convictions following conditional guilty pleas to conspiracy to distribute heroin, in violation of 21 U.S.C. §§ 846 and 841(a)(1). Figueroa also challenges his sentence. The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. We affirm.
 
 
 2
 * Villalpando argues that the wiretap was invalid because the government failed to establish probable cause. The judge authorizing a wiretap has considerable discretion. United States v. Brone, 792 F.2d 1504, 1506 (9th Cir.1986 (Brone ). Our review of the issuing court's decision to authorize a wiretap under 18 U.S.C. § 2518 is therefore deferential. United States v. Brown, 761 F.2d 1272, 1275 (9th Cir.1985) (Brown ). We review the finding of probable cause to be sure that it has a substantial basis. United States v. Meling, 47 F.3d 1546, 1552 (9th Cir.), cert. denied, 116 S.Ct. 130 (1995).
 
 
 3
 Villalpando argues that the affidavit failed to show that "there is probable cause for belief that [Betancourt] is committing, has committed, or is about to commit a particular offense," 18 U.S.C. § 2518(3)(a), and that "there is probable cause for belief that particular communications concerning that offense will be obtained through such interception." Id. § 2518(3)(c).
 
 
 4
 The affidavit details an investigation resulting from a customs agent's involvement in a 125-kilogram shipment of cocaine into the United States. Three days after police searched the residence to which the drugs were transported, Betancourt was seen circling the residence after two other men got out of the car he was driving and walked to the rear of the residence. Police officers, in response to an anonymous call reporting a burglary, detained the two men who had gotten out of Betancourt's car. When Betancourt observed the police officers, he rapidly accelerated away. During searches conducted before and after the alleged burglary, narcotics, large quantities of cash, and guns were found at this residence.
 
 
 5
 DeMorat's affidavit also reveals that Betancourt was present during the shipment of 250 kilograms of cocaine. A van containing the cocaine was allowed to cross the border. The van was followed to Lopez Automotive. At the same time, Betancourt was seen engaging in extensive counter-surveillance driving as he drove from his home to Lopez Automotive. Betancourt met with and conversed with men who had previously engaged in a conversation with the man who drove the van containing the shipment of cocaine.
 
 
 6
 In addition, Betancourt was observed driving to Toledo's Fashions with an Hispanic male. While driving, he continuously used a cellular telephone. Betancourt was seen speaking with two males inside Toledo's. During this period, two cars drove to Toledo's. One of them, a silver vehicle, parked in an alley at the rear of the business. One of the men with whom Betancourt was speaking drove in a Ford Bronco to the rear of the business to meet the silver car, and both left. Police later stopped both cars separately. The Bronco was driven by one of the men with whom Betancourt conversed at Toledo's. Inside the Bronco was a duffle bag containing 26 pounds of cocaine. Inside the silver car was a hidden compartment consistent with those used to transport drugs.
 
 
 7
 According to the affidavit, a confidential informant provided information that the target telephone was Betancourt's. This was confirmed by a consensually monitored telephone call between Betancourt and the informant. A court-ordered pen register on the target telephone listed over 30 calls to a residence in South Gate, California. The affidavit reveals that at the time the police were searching for someone who had been kidnapped from that residence and that numerous ransom calls had been received at the residence. A log of ransom calls matched 24 calls from the target phone. An undercover agent who was familiar with Betancourt's voice recognized his voice on a consensually-monitored call. An officer negotiating for the victim's release was told during a conversation that the victim was being held because he had lost five kilograms of cocaine. Ultimately, the victim was to be exchanged for a truck and cash. The truck was picked up and driven to a residence owned by Betancourt.
 
 
 8
 We conclude that these facts establish a substantial basis to support the district court's findings of probable cause. The affidavit establishes facts going far beyond Betancourt's mere "association" with criminals, making Villalpando's reliance on Sibron v. New York, 392 U.S. 40, 62 (1968), misplaced.
 
 II
 
 9
 Next, we review Villalpando's and Figueroa's contention that the affidavit failed to establish that the wiretap was necessary. See 18 U.S.C. § 2518(1)(c), 2518(3)(c). We review for abuse of discretion the issuing court's factual finding that the government made the required showing of necessity. United States v. Commito, 918 F.2d 95, 98 (9th Cir.1990), cert. denied, 502 U.S. 879 (1991).
 
 
 10
 The government is not required to "exhaust every conceivable alternative before obtaining a wiretap." Brone, 792 F.2d at 1506. We interpret the necessity requirement in "a practical and commonsense fashion, and [wiretaps] need not therefore be used only as a last resort." United States v. Bailey, 607 F.2d 237, 241-42 (9th Cir.1979), cert. denied, 445 U.S. 93 (1980). Necessity is established where "normal investigative techniques employing a normal amount of resources have failed to make the case within a reasonable period of time." Id. at 242. Where the objective is to discover the full scope of the drug operation, the necessity requirement is met if normal investigative procedures have not succeeded in developing evidence against all members of the conspiracy. United States v. Torres, 908 F.2d 1417, 1422 (9th Cir.) (Torres ), cert. denied, 498 U.S. 948 (1990).
 
 
 11
 DeMorat's affidavit described each of the investigative techniques attempted--the use of undercover agents, informants, surveillance, and pen registers. It explained why each of these techniques was insufficient. The affidavit also explained why other techniques, such as search warrants, grand jury subpoenas, grants of immunity, trash searches, and aerial surveillance would be insufficient.
 
 
 12
 The use of undercover agents was limited by the unwillingness of skilled drug traffickers to reveal information regarding their suppliers to protect themselves from law enforcement and from their competitors. United States v. Carneiro, 861 F.2d 1171, 1177 (9th Cir.1988) (necessity shown in part because affidavit indicated inability to infiltrate drug operation to identify sources or the scope of the operation).
 
 
 13
 The use of surveillance was inadequate because it would not reveal the substance of any conversations or contacts. The affidavit states that surveillance could not provide conclusive information about the criminal activities under investigation. Brown, 761 F.2d at 1276 (wiretap necessary in part because affidavit stated that surveillance had failed to provide conclusive evidence of drug conspiracy and was unlikely to do so in the future).
 
 
 14
 Contrary to Villalpando's and Figueroa's assertions, the affidavit establishes that the continued use of confidential informants could not have accomplished the goals of the investigation. Only one informant had contact with Betancourt, and he was an employee who did not appear to have any involvement in Betancourt's drug activities. Torres, 908 F.2d at 1422 (necessity shown in part where affidavit states that informants could not determine source of drugs).
 
 
 15
 Villalpando's and Figueroa's other arguments simply do not establish that the district court abused its discretion. The affidavit explains that search warrants would have been inadequate because sources and other crucial information is intentionally kept hidden or encoded. In addition, execution of a search warrant would effectively terminate the investigation. Brown, 761 F.2d at 1276 (mass search warrants could have compromised investigation). Although the affidavit contains some general allegations, some conclusory language will not negate a finding of necessity if the affidavit as a whole alleges facts demonstrating necessity. Torres, 908 F.2d at 1423.
 
 
 16
 Based on the detailed showing in the DeMorat affidavit, we conclude that the issuing court's finding of necessity was not an abuse of discretion and that the denial of Villalpando's and Figueroa's motion to suppress was proper.
 
 III
 
 17
 Villalpando and Figueroa also argue that the wiretap evidence should have been suppressed because the government failed to minimize the interception of nonpertinent conversations. "We review de novo whether the agents properly minimized the monitoring of phone conversations not relevant to its investigation as required by 18 U.S.C. § 2518(5)." Id. Because Villalpando and Figueroa do not allege that the specific conversations to which they were a party should have been minimized, "we only examine whether the government has shown a prima facie case of compliance with the minimization requirement." Id. Minimization must be objectively reasonable under the circumstances to withstand scrutiny. Scott v. United States, 436 U.S. 128, 137-38 (1978) ( Scott ). "The mere interception of calls unrelated to the drug conspiracy does not indicate a failure to meet the minimization requirement." Torres, 908 F.2d at 1423. "[W]hen the investigation is focusing on what is thought to be a widespread conspiracy more extensive surveillance may be justified in an attempt to determine the precise scope of the enterprise." Scott, 436 U.S. at 140. "[T]he interception of even a relatively high percentage of nonpertinent calls is an inaccurate indicator of whether or not the government complied with the minimization requirement. Because many telephone calls are brief in duration, a listener frequently cannot determine a particular call's relevance to the investigation before the call has been completed." United States v. Homick, 964 F.2d 899, 903 (9th Cir.1992) (citation omitted).
 
 
 18
 In this case, monitoring agents were provided with a detailed memorandum and an instructional classes that explained the need for minimization and provided guidelines to help ensure compliance. Every monitoring agent and officer had to read the memorandum. Supervising agents were in the monitoring room during the wiretap, and an Assistant United States Attorney was available on-call to answer questions concerning minimization. We have held that these procedures constitute a prima facie showing of compliance with the minimization requirement. Torres, 908 F.2d at 1423. We therefore conclude that the government met its burden of demonstrating a prima facie case of reasonable efforts to minimize the interception of nonpertinent calls.
 
 IV
 
 19
 Figueroa challenges his sentence on two grounds. He argues that the district court erred in refusing to find that he was a minor participant and erred in refusing to depart downwardly from his criminal history category. We review de novo the district court's interpretation and application of the Sentencing Guidelines. United States v. France, 57 F.3d 865, 866 (9th Cir.1995). However, we review for clear error the district court's factual findings in the sentencing phase. United States v. Pinkney, 15 F.3d 825, 827 (9th Cir.1994).
 
 
 20
 Figueroa argues that he was a mere courier who transported a minimal quantity of drugs and therefore deserved a reduction in his offense level under Guideline § 3B1.2. The presentence report indicated that Figueroa was involved in storing and hiding the drugs. He sold drugs and collected drug money. He expressed an desire to prevent others from speaking to the police. These facts support the district court's refusal to adjust his offense level; the court did not clearly err.
 
 
 21
 Figueroa also argues that the district court improperly denied his request for a downward departure on the ground that his criminal history category overrepresented the seriousness of his prior offenses. We lack jurisdiction to review the district court's discretionary refusal to depart downwardly. United States v. Carr, 56 F.3d 38, 39 n. 1 (9th Cir.), cert. denied, 116 S.Ct. 248 (1995).
 
 
 22
 Figueroa also argues that sections 4A1.1(d) and 4A1.1(e) together amount to unconstitutional double counting. Figueroa did not raise this argument in the district court and we refuse to review it for the first time on appeal. See United States v. Winslow, 962 F.2d 845, 849 (9th Cir.1992).
 
 
 23
 AFFIRMED.
 
 
 24
 Note: This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4