**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Douglas William BROWN,**
**Defendant-Appellant.**

**No. 83–5330.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 7, 1984.

Decided Jan. 29, 1985.

**1274**

Charles F. Gorder, Jr., Asst. U.S. Atty., San Diego, Cal., for plaintiff-appellee.

Michael Pancer, Pancer & Sherman, San Diego, Cal., for defendant-appellant.

Before WALLACE and NORRIS, Circuit Judges, and WILLIAMS,* District Judge.

WALLACE, Circuit Judge:

Brown appeals his conviction on two counts of unlawful use of a telephone facility in violation of 21 U.S.C. § 843(b). The district court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291. We affirm.

## I

Brown, an attorney, began purchasing cocaine for personal use from his neighbor, Valletta, early in 1982. Later, Brown agreed to allow Valletta to store cocaine at his residence and gave Valletta a key to permit entry when he was not at home. In return, Valletta began giving Brown free cocaine. Brown testified that his purpose in permitting the storage at his residence was not to conspire with Valletta to distribute cocaine, but only to assist his friends in obtaining it.

In May 1982, the Federal Bureau of Investigation (FBI) began investigating a group allegedly involved in distributing cocaine in the San Diego area. Although an FBI agent infiltrated the organization and obtained incriminating information from Bishop, a suspected participant, and from several confidential informants, the investigation reached an impasse when the FBI's confidential sources refused to testify or cooperate further and when the evidence obtained through its conventional methods appeared insufficient to result in any convictions.

The FBI therefore obtained an order from the district court in August 1982, authorizing installation of wiretaps on the telephones of Valletta, Bishop, and another suspect in the operation, DeVito. The wiretaps revealed, among other things, that Valletta occasionally met customers at Brown's residence and sold them cocaine. In October 1982, the FBI obtained an order from the district court permitting a tap on Brown's telephone. This wiretap revealed that Brown also conducted transactions with his friends at his residence, and passed their money on to Valletta.

The investigation resulted in Brown's indictment on one count of conspiracy to distribute and possess with intent to distribute cocaine and on fourteen counts of using a telephone to facilitate the distribution of and the possession with intent to distribute cocaine. After his indictment, Brown moved to suppress the evidence obtained from the wiretaps and to dismiss the indictment for violating his sixth amendment right to a speedy trial. The district judge denied Brown's motions, and his case

---

* Honorable David W. Williams, United States District Judge, Central District of California, sitting by designation.

went to trial. The jury found him guilty on two of the telephone counts, not guilty on twelve of them, and it was unable to reach a decision on the separate conspiracy charge. The district judge sentenced Brown to a year and one day on each of the two telephone counts, to run concurrently.

## II

Brown first argues that the district court should have suppressed the evidence obtained from the wiretaps. He asserts that the affidavit offered in support of the August wiretap order did not properly allege the necessity for the wiretaps as required by 18 U.S.C. § 2518(1)(c) and that there was in fact neither probable cause nor sufficient need for the order as required by 18 U.S.C. § 2518(3). Thus, he concludes that the evidence from the August wiretaps was illegally seized and the evidence from the October wiretap was tainted fruit. Alternatively, he argues that the district court should have suppressed the evidence obtained from the October wiretap because the October order did not satisfy section 2518(3)'s necessity requirement.

■ To authorize a wiretap, section 2518(3) requires a judge to make two types of findings. First, he must find there is "probable cause for belief that an individual is committing, has committed, or is about to commit" certain offenses including narcotics violations, *id.* § 2518(3)(a), that relevant communications will be intercepted by the wiretap, *id.* § 2518(3)(b), and that the targeted persons will use the targeted facility. *Id.* § 2518(3)(d). Second, he must find that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." *Id.* § 2518(3)(c). These two requirements are usually referred to as the probable cause and necessity requirements. Section 2518(1)(c) requires an investigative agency seeking a wiretap order to provide the judge with "a full and complete statement" demonstrating the necessity requirement.

■ The necessity requirement exists "to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." *United States v. Kahn,* 415 U.S. 143, 153 n. 12, 94 S.Ct. 977, 983 n. 12, 39 L.Ed.2d 225 (1974). Although wiretaps are not to be used routinely "as the initial step in criminal investigation[s]," *United States v. Giordano,* 416 U.S. 505, 515, 94 S.Ct. 1820, 1826, 40 L.Ed.2d 341 (1974), the necessity requirement is not intended to relegate the use of wiretaps to that of last resort; the restriction must be interpreted "in a practical and commonsense fashion." *United States v. Bailey,* 607 F.2d 237, 241 (9th Cir.1979), *cert. denied,* 445 U.S. 934, 100 S.Ct. 1327, 63 L.Ed.2d 769 (1980).

■ Our review of the district court's determination under this statute is deferential. We review the findings of probable cause under the same standard as for a search warrant, *United States v. Fury,* 554 F.2d 522, 530 (2d Cir.), *cert. denied,* 436 U.S. 931, 98 S.Ct. 2831, 56 L.Ed.2d 776 (1978), *and* 433 U.S. 910, 97 S.Ct. 2978, 53 L.Ed.2d 1095 (1977), to be sure it had a substantial basis. *United States v. Seybold,* 726 F.2d 502, 503 (9th Cir.1984); *see also Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). Although we examine de novo whether "a full and complete statement" was submitted meeting section 2518(1)(c)'s requirements, *United States v. McConney,* 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied,* — U.S. —, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984), we review conclusions that the wiretaps were necessary in each situation only for an abuse of discretion. *See United States v. Martin,* 599 F.2d 880, 886–87 (9th Cir.), *cert. denied,* 441 U.S. 962, 99 S.Ct. 2408, 60 L.Ed.2d 1067 (1979).

■ The government argues that we need not review the August order at all because we have already held, in another case involving the same investigation, that the affidavit underlying the August order satisfied the probable cause and necessity requirements. *See United States v. Goetz,* 730 F.2d 771 (9th Cir.1984) (mem.). We cannot accept the government's argument.

Brown was not a party in *Goetz*, and thus *Goetz* is not binding as law of the case, as res judicata, or as a matter of collateral estoppel. Although in some instances courts have permitted nonparties to use collateral estoppel offensively, *see, e.g., Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331, 99 S.Ct. 645, 651, 58 L.Ed.2d 552 (1979), we know of no case permitting a party to use it offensively against nonparties to the original decision. This is consistent with the principle that each party is accorded a full and fair opportunity to litigate a particular issue. *See id.* at 327, 99 S.Ct. at 649. Because Brown has not yet had his full opportunity on this issue, he is not precluded from challenging the August affidavit on this appeal.

■ Nevertheless, we conclude that the district court did not err in allowing the wiretaps. The finding of probable cause based on the August affidavit had a substantial basis. The affidavit recites facts which provide substantial reason to believe that Valletta, Bishop, and DeVito were engaging in narcotics violations and that their communications concerning these violations would be intercepted by tapping their telephones. Bishop had informed the affiant that she was participating in a large-scale narcotics conspiracy involving DeVito and Valletta. She also had ingested what appeared to be cocaine in the affiant's presence, used the telephone in his presence to conduct what she described as a narcotics transaction, and asked him to store $150,000 in expected gains from that deal. Telephone records show unusually high telephone activity by DeVito and Valletta during the pendency of this supposed transaction and at other times when drug dealing was suspected. A confidential informant had told the affiant that he had heard Valletta admit he was a cocaine dealer and he had seen Valletta possess cocaine and accumulate wealth rapidly.

■ Nor do we believe the district court abused its discretion by finding that the August wiretaps were necessary under the circumstances. The wiretapping application for the August order demonstrated that normal investigative procedures had been employed in good faith, that they had not succeeded and were not reasonably likely to succeed in proving the illegal activity, if it was going on, and that wiretapping offered a substantially better chance of success. This satisfied section 2518(1)(c). The judge did not abuse his discretion under section 2518(3)(c) in believing the affiant's detailed assertions. Physical surveillance had been employed, but had failed to provide conclusive evidence, and continued surveillance was unlikely to be more successful under the circumstances of the case. Further infiltration by the one FBI agent may have been unusually dangerous because of certain threats and, without the testimony of the confidential sources as witnesses, may not have produced sufficiently reliable proof to convict. The telephone records, though raising the suspicion that illegal activity was occurring, failed to identify specific users or reveal the substance of the conversations. Mass search warrants or interviews would more likely have compromised the investigation rather than promoted it.

■ Finally, the district judge's conclusion regarding the necessity of the October wiretap was not an abuse of discretion either. There was no reason for him to believe that less intrusive conventional procedures would have been any more helpful in the investigation of Brown than they had been in the investigation of the others. The government could do no more than explain why the problems associated with physical surveillance, further infiltration, the telephone records, search warrants, or interviews were no different in this instance.

### III

■ Brown next argues that his conviction must be reversed because the government failed to bring him to trial within the time limits set by the Speedy Trial Act Amendments Act of 1979, 18 U.S.C. § 3161(c)(1) (the Act). However, he failed to raise his argument in the district court in a timely fashion. Brown's failure

to move for dismissal under the Act prior to trial results in "waiver of the right to dismissal under [it]." *Id.* § 3162(a)(2). The only timely motion Brown made in the district court regarding post-indictment delay was based exclusively on his sixth amendment right to a speedy trial. Mentioning the Act in renewing his sixth amendment motion during voir dire examination of the jury did not cure that failure. Even if it were timely, this passing reference failed to alert the district judge of any assertion of rights in addition to those already asserted under the sixth amendment. Consequently, Brown waived his right to bring a motion to dismiss based on this alleged violation of the Act.

## IV

■ Brown's next argument is that the jury's failure to reach a decision on the general conspiracy count precludes his conviction on any of the telephone counts. He claims that the telephone counts involved only facilitation charges and were predicated solely on the general conspiracy offense on which the jury was unable to reach a verdict. He argues that, although the general rule announced in *Dunn v. United States,* 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356 (1932), is that "[c]onsistency in the verdict is not necessary," an exception to the rule occurs when a jury's verdict regarding facilitation of a felony is inconsistent with its verdict regarding the underlying crime. Thus, he concludes that his conviction for using the telephones to facilitate the conspiracy must be reversed because the jury was unable to reach a decision on the underlying conspiracy charge.

However, in a unanimous decision issued this Term, the Supreme Court expressly reaffirmed the generality of the rule announced in *Dunn,* emphasizing that it "has stood without exception in this Court for 53 years ... and we think it should [remain that way]." *United States v. Powell,* —— U.S. ——, ——, 105 S.Ct. 471, 479, 83 L.Ed.2d 461 (1984). For this reason, the Supreme Court reversed a decision from this circuit holding that a facilitation con-

viction must be reversed if the defendant is acquitted on the underlying felony. *Id.* at 475, 479. Thus, even if the telephone counts in this case were predicated solely on the conspiracy count as Brown claims, the jury's failure to convict Brown on the conspiracy count does not render the convictions on the telephone counts invalid.

## V

Brown also contends that the district court's failure to give his requested instructions concerning lesser-included offenses was erroneous, requiring reversal and a new trial. We consider this argument only with respect to the two counts on which he was convicted.

■ The lesser-included offense doctrine is derived from rule 31(c), Fed.R. Crim.P., which states that a defendant may be found guilty of an offense "necessarily included" in the offense charged. We explained the doctrine in *United States v. Johnson,* 637 F.2d 1224, 1232–45 (9th Cir. 1980) (*Johnson*). The test for determining whether a particular defendant is entitled to a lesser-included offense instruction has two parts. First, the defendant must identify the lesser-included offense within the offense charged. *See United States v. Harvey,* 701 F.2d 800, 807 (9th Cir.1983); *Johnson,* 637 F.2d at 1233. Second, the defendant must demonstrate that "a rational jury could find the defendant guilty of the lesser offense but not the greater." *Harvey,* 701 F.2d at 807; *Johnson,* 637 F.2d at 1233–34. It is the first prong which is critical in this case.

In deciding whether a defendant has met this first burden, a district court must apply the "inherent relationship" test, which requires an examination of the facts of the case. *See Johnson,* 637 F.2d at 1234. The offense is included if "the two offenses ... 'relate to protection of the same interests, and ... so relate[ ] that in the general nature of these crimes, though not necessarily invariably, proof of the lesser offense is necessarily presented as part of the showing of the commission of the greater offense.' " *United States v. Sto-*

*larz,* 550 F.2d 488, 491 (9th Cir.), *cert. denied,* 434 U.S. 851, 98 S.Ct. 162, 54 L.Ed.2d 119 (1977), *quoting United States v. Whitaker,* 447 F.2d 314, 318 (D.C.Cir. 1971).

 The first part of this test presents a mixed question of law and fact. But because it requires us to consider primarily legal concepts and "to exercise judgment about the values that animate legal principles," we review the district court's decision regarding it de novo. *United States v. McConney,* 728 F.2d 1195, 1202 (9th Cir.) (en banc), *cert. denied,* —— U.S. ——, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

 Brown's only effort to identify a lesser-included offense involving the telephone counts was his proposed instruction which stated that a person who uses the telephone to order "small amounts of cocaine for his and others' personal consumption" cannot be convicted under 21 U.S.C. § 843(b). That part of Brown's proposed instruction referring to the use of a telephone to order cocaine for others, however, is clearly not a lesser-included offense; to the contrary, it is precisely the offense condemned by section 843(b). *See, e.g., United States v. Ramirez,* 608 F.2d 1261, 1264 (9th Cir.1979) (sharing narcotics with friend constitutes "distribution" for purposes of 21 U.S.C. § 841(a)(1)); *United States v. Wright,* 593 F.2d 105, 108 (9th Cir.1979) (same). That portion of his proposed instruction referring to the use of a telephone to order cocaine for personal use is similarly not a lesser-included offense; indeed, it is no offense at all. Section 843(b) condemns the use of a telephone in facilitating the commission of certain felonies. Possession of cocaine for personal use is only a misdemeanor. *See* 21 U.S.C. § 844. There is no statute analogous to section 843(b) punishing the use of the telephone to commit a misdemeanor. We need not decide whether actual possession of narcotics for personal use could be considered a lesser-included offense under section 843(b). Under our "inherent relationship" test, Brown's proposed instruction cannot fairly be read to assert such a position.

## VI

 Brown's final argument is that the district court wrongfully increased the severity of his sentence because he exercised both his fifth amendment right to remain silent by refusing to cooperate with the government and his sixth amendment right to demand a jury trial. To support this allegation, he cites the following statement by the district judge:

> You are not like the others in this grouping, the main sources. They were debriefed. They made full disclosures. They testified before the grand jury, testified at trial.
>
> You didn't take that course.
>
> I think you committed perjury on the stand. I accept the jury's evaluation and I agree with it. I think that's a big difference between you and other people in the case.

 Brown's argument is unpersuasive. This statement fails to show that the district judge increased Brown's sentence for exercising his fifth and sixth amendment rights. Rather, he merely showed leniency by reducing the sentences of the others because of their cooperation with the authorities. This is an appropriate exercise of discretion in an area in which discretion is necessarily broad. Moreover, a sentencing court may consider a defendant's perjury in determining the length of the sentence. *United States v. Grayson,* 438 U.S. 41, 54–55, 98 S.Ct. 2610, 2617–2618, 57 L.Ed.2d 582 (1978); *United States v. Martinez-Navarro,* 604 F.2d 1184, 1186 (9th Cir.1979), *cert. denied,* 444 U.S. 1084, 100 S.Ct. 1041, 62 L.Ed.2d 769 (1980). Thus, there was no violation of Brown's fifth or sixth amendment rights.

AFFIRMED.