8 F.3d 30
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Basilio ANGULO-LOPEZ, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Roberto HERRERA-ROBLES, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ismael BARRON, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Maria MERAS, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Uriel CASTANEDA, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jose CASTANEDA, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Epifanio GONZALEZ-CASTRO, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Victor CHAVEZ-CASTANEDA, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Terezo De Jesus UMANSOR-ALVAREZ, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Lucas ORNELAS-MARTINEZ (True Name: Jose Licea), Defendant-Appellant.
 Nos. 92-30092, 92-30094 thru 92-30098, and 92-30100 thru 92-30102.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 8, 1993.
Decided Oct. 5, 1993.
 
 Before: WRIGHT, FARRIS and D.W. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 This is a consolidated appeal brought by eleven individuals who were convicted of charges stemming from their involvement in an extensive conspiracy to distribute cocaine and heroin. Appellants raise a multitude of issues, most of which we address here; we consider some of Lucas Ornelas-Martinez's ("Ornelas-Martinez") and Terezo Unmansor-Alvarez's ("Umansor-Alvarez") sentencing claims and Uriel Castaneda's ("Uriel"),[1] Maria Meras' ("Meras") and Ismael Barron's ("Barron") appeals from their firearm convictions in a separate, published disposition. We affirm the district court as to all of the conviction and sentencing challenges addressed in this disposition.
 
 I. Indictment and Severance
 
 3
 Appellant Barron argues that the conspiracy count is fatally flawed because it failed to specify the time frame within which the alleged conspiracy occurred. The sufficiency of an indictment is reviewed de novo. United States v. Dischner, 960 F.2d 870, 886 (9th Cir.1992). Because Barron raises this issue for the first time on appeal, we do not consider it. United States v. Flores-Payon, 942 F.2d 556, 558 (9th Cir.1991).
 
 
 4
 Appellant Victor Castaneda ("Victor") argues that the court erred in denying his motion for severance. We review the denial of a motion to sever for abuse of discretion. United States v. Douglass, 780 F.2d 1472, 1478 (9th Cir.1986). To obtain reversal, "a party must demonstrate that joinder was so manifestly prejudicial that it outweighed the dominant concern with judicial economy." United States v. Monks, 774 F.2d 945, 948 (9th Cir.1985) (citations omitted). Victor has not made a showing that a separate trial would have given him a better chance for acquittal or that his substantive rights were violated by a joint trial. Douglass, 780 F.2d at 1478. We affirm the district court's denial of the motion to sever.
 
 II. Suppression Motions
 
 5
 We review de novo the district court's rulings on motions to suppress, United States v. Homick, 964 F.2d 899, 902 (9th Cir.1992), but we review any factual findings for clear error. United States v. Proa-Tovar, 966 F.2d 1277 (9th Cir.), amended on other grounds, 975 F.2d 592 (9th Cir.1992). The original decisions to authorize the wiretaps, searches and arrests, however, are subject to differing standards of review which we discuss in the context of each motion.
 
 A. THE WIRETAPS
 
 6
 Appellants challenge the district court's denial of their motions to suppress evidence obtained from the Barron and Castaneda family wiretaps. We review the district court's authorization of a wiretap for abuse of discretion. United States v. Echavarria-Olarte, 904 F.2d 1391, 1395 (9th Cir.1990).
 
 
 7
 A federal wiretap may be authorized when the issuing judge determines that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or [appear] to be too dangerous." 18 U.S.C. § 2518(3)(c). The question of whether an affidavit has demonstrated that the wiretap is necessary to the success of an investigation is to be answered in a "practical and common sense fashion." United States v. Brown, 761 F.2d 1272, 1275 (9th Cir.1985). A district court's judgment that an affidavit has shown the requisite necessity is also reviewed for abuse of discretion. United States v. Brown, 951 F.2d 999, 1002 (9th Cir.1991).
 
 
 8
 In regard to the Barron wiretap, we affirm the district court for the reasons stated in its order denying the motion to suppress. We also affirm the district court's decision that the 30-day extension of the Barron wiretap was necessary. The application for the extension stated that while several participants in Barron's organization had been identified, Barron had other unidentified suppliers. Also, the location of the "stash houses" and the profits from the operation were unknown. (Angulo-Lopez ER 183-85, 187-88, 192-200) When normal investigative procedures can lead to the successful development of evidence against some, but not all, members of a narcotics conspiracy, necessity will still exist. United States v. Torres, 908 F.2d 1417, 1422 (9th Cir.), cert. denied, 498 U.S. 948 (1990).
 
 
 9
 Umansor-Alvarez argues that the affidavit in support of the Castaneda family wiretap did not establish necessity, but instead contained generalized statements about the difficulty of investigating drug trafficking conspiracies. Although the district court observed that the affidavit was not a "model of specificity" (Angulo-Lopez ER at 73), it also concluded that the affidavit established that recent arrests had made targeted individuals unreceptive to new contacts by undercover agents, that undercover buys had failed to produce sufficient evidence against Uriel or to learn the scope of his organization, and that counter-surveillance was hindering the investigation. (ER at 73-74) This was sufficient. See United States v. Spagnuolo, 549 F.2d 705, 710 (9th Cir.1977).
 
 
 10
 Umansor-Alvarez also asserts that the affidavit for the Castaneda family wiretap was not supported by probable cause. Probable cause for a wiretap requires a reasonable belief that: 1) an individual is committing certain offenses; 2) relevant communications will be intercepted by a wiretap; and 3) the targeted person will use the targeted facility. See 18 U.S.C. § 2518; Brown, 761 F.2d at 1275. The affidavit summarized the coded conversations between Barron and Uriel which were intercepted as a result of the Barron wiretap. (p 8-17, 33). The affidavit also provided substantial information about specific drug transactions involving Uriel. It was reasonable for the issuing judge to conclude that there was a substantial basis for believing these coded conversations pertained to drugs and that probable cause existed for the wiretap (OR at 79). We affirm the district court's denial of Umansor-Alvarez's motion to suppress.
 
 B. SEARCHES AND SEIZURES
 
 11
 Umansor-Alvarez and Basilio Angulo-Lopez ("Angulo-Lopez") argue that the government lacked probable cause to search their homes and storage lockers. We review the magistrate's issuance of a search warrant for clear error. United States v. Bertrand, 926 F.2d 838, 841 (9th Cir.1991). We look to see if there was a "substantial basis" for concluding that the warrant established probable cause. Brown, 951 F.2d at 1002. We require only an attenuated link between drug activity and a suspected drug trafficker's home in order to find that there is probable cause to search the residence. United States v. Peacock, 761 F.2d 1313, 1315 (9th Cir.), cert. denied, 474 U.S. 847 (1985).
 
 
 12
 The affidavit which supported the search of Umansor-Alvarez's home was also the basis for a number of other search warrants. The portion of the affidavit in support of the search of Umansor-Alvarez's residence established that Uriel was heavily involved in drug trafficking and that drug-related telephone conversations took place between him and a man called "Jesse." (OR at 5) The affidavit stated that "Jesse" was Umansor-Alvarez's nickname. Thus, there was a substantial basis to believe that evidence of a crime would be located at Umansor-Alvarez's address. See United States v. Terry, 911 F.2d 272, 274-76 (9th Cir.1990); United States v. Fannin, 817 F.2d 1379, 1380-81 (9th Cir.1987). We affirm the district court.
 
 
 13
 Angulo-Lopez challenges the district court's finding that probable cause existed for the officers to search his car in Oregon. Because Angulo-Lopez did not challenge this search below, we do not consider this issue on appeal. United States v. Carlson, 900 F.2d 1346, 1349 (9th Cir.1990). He also challenges the search of his Seattle residence at 2553 S. Myrtle Street. Relying on United States v. Taylor, 599 F.2d 832 (8th Cir.1979), he argues that the observation of a suspect entering a residence does not establish probable cause to search the residence and the affidavit in support of the search warrant failed to establish that Jesusa Gallagher ("Gallagher") lived at the Myrtle Street address.
 
 
 14
 Angulo-Lopez is correct that search warrants pertain to places, not persons. This means that it is not relevant whether there was probable cause to believe Gallagher lived at the Myrtle Street address. Zurcher v. Standford Daily, 436 U.S. 547, 554-60 (1978). What is relevant is that a drug transaction had been arranged over the telephone at that residence, and that when Gallagher left that address she made no stops before she arrived at the pre-arranged location for the drug deal. There was a substantial basis upon which to conclude that the drugs Gallagher delivered were stored at the Myrtle Street residence. We affirm.
 
 
 15
 Angulo-Lopez contends that the warrants for the searches of his residences (1807 S.W. 118th Street, 7741 15th Avenue, and 10264 California Avenue) and storage lockers were tainted because the warrants were based on information obtained from the Barron wiretap. This contention is frivolous. The information provided to the magistrate who issued the telephonic warrants for the three residences was not obtained through the Barron wiretap. The magistrate also had independent information which was adequate to support the warrant for the searches of Angulo-Lopez's lockers. We therefore affirm the district court's denial of Angulo-Lopez's motion to suppress.
 
 
 16
 Umansor-Alvarez argues that his arrest, which occurred at his home, was not based on probable cause. When determining whether probable cause existed for an arrest, we review de novo, United States v. Smith, 790 F.2d 789, 791 (9th Cir.1986) using the test of a "prudent person." United States v. Greene, 783 F.2d 1364, 1367 (9th Cir.), cert. denied, 476 U.S. 1185 (1986). Probable cause to arrest must pertain to a particular individual; it is not sufficient that an individual happens to be in a place where criminal activity is allegedly occurring. United States v. Robertson, 833 F.2d 777, 782 (9th Cir.1987). There was unrefuted testimony by the arresting agent that he did not arrest Umansor-Alvarez until he confirmed that Umansor-Alvarez's nickname was Jesse. Given that the affidavit for the search warrant established that DEA agents had intercepted three drug-related conversations between "Jesse" and Uriel, the officer had probable cause to arrest once he knew Umansor-Alvarez's nickname.
 
 C. POST-ARREST STATEMENTS
 
 17
 Umansor-Alvarez contends that his post-arrest statements should have been suppressed because they were the product of an illegal arrest and search. See Lanier v. South Carolina, 474 U.S. 25, 26 (1985). Given our resolution of the arrest issue, we affirm the district court.
 
 
 18
 Ornelas-Martinez's attorney failed to move to suppress Ornelas-Martinez's post-arrest statements by the date ordered by the court for all suppression motions. Instead, on the day trial was to begin, he brought a motion which the district court dismissed as untimely. Ornelas-Martinez argues that the procedural default resulted from ineffective assistance of counsel. The issue of ineffective assistance of counsel is ordinarily raised in habeas proceedings. United States v. Bosch, 951 F.2d 1546, 1549 (9th Cir.1991). We will consider it on direct appeal only when the defendant's legal representation was so inadequate "as obviously to deny him his Sixth Amendment right to counsel." United States v. Rewald, 889 F.2d 836, 885 (9th Cir.1989), amended on other grounds, 902 F.2d 18 (9th Cir.), cert. denied, 498 U.S. 819 (1990). Ornelas-Martinez does not argue and there is nothing in the record to suggest that his representation rose to such a level of incompetency. We affirm the district court's dismissal of his motion as untimely.
 
 III. Other Evidentiary Rulings
 A. EXPERT TESTIMONY
 
 19
 Umansor-Alvarez argues that the district court erred in admitting expert testimony to interpret the coded telephone conversations recorded on the wiretap. We review the district court's ruling for abuse of discretion. Dischner, 974 F.2d at 1521. The district court properly held that since the code words used in drug transactions were not within a layperson's knowledge, the government could use expert testimony to interpret the coded conversations recorded by the wiretaps. Fed.R.Evid. 702. The court also properly accepted a DEA agent as an expert. United States v. Bailey, 607 F.2d 237, 240 (9th Cir.1979), cert. denied, 445 U.S. 934 (1980). Finally, in this circumstance, it was also proper for the district court to allow the DEA agent to interpret the recorded conversations, rather than to testify only in a general way about the language of the drug world. See, e.g., United States v. Hoffman, 832 F.2d 1299, 1310 (1st Cir.1987).
 
 B. HEARSAY
 
 20
 Jose Castaneda ("Jose") was convicted of two counts of unlawful use of a telecommunication facility to facilitate a drug trafficking crime. He argues that the district court abused its discretion when it allowed an incriminating recorded conversation between him and a person identified as "Miguel" to be introduced into evidence on the ground that Miguel's statements were hearsay. At the time the evidence was introduced, Jose failed to object. It is well settled that hearsay evidence admitted without objection may be considered by the trier of fact. United States v. Fernandez, 772 F.2d 495, 503 (9th Cir.1985).
 
 IV. Jury Instructions
 
 21
 Umansor-Alvarez and Uriel challenge several jury instructions. We review the district court's formulation of jury instructions for abuse of discretion, United States v. Johnson, 956 F.2d 197, 199 (9th Cir.1992), but we review de novo whether a jury instruction misstates the elements of a crime. United States v. Shabani, 993 F.2d 1419, 1422 (9th Cir.1993). When reviewing whether an instruction adequately states the law, the challenged instruction is to be read in the context of the jury instructions as a whole. United States v. Garza, 980 F.2d 546, 553-54 (9th Cir.1992).
 
 A. COURT'S CLARIFICATION OF PINKERTON
 
 22
 During its deliberations, the jury sent a note to the court inquiring whether "one or more members of a conspiracy can be found innocent of a count in which other members of the conspiracy are found guilty." The court responded, "yes, if it was unforeseeable that another member of the conspiracy would have committed that crime." (Uriel ER at 166) Umansor-Alvarez and Uriel contend that the court's response wrongly failed to remind the jury that in order to find a conspirator guilty of a crime committed by a co-conspirator, the crime must have been in furtherance of the conspiracy. Instruction 23, however, informed the jury that vicarious liability for another's crime required a finding that the crime was both foreseeable and in furtherance of the conspiracy. Neither the jury's question nor the court's response disturbed the previous instruction.
 
 
 23
 Second, Umansor-Alvarez contends that the response did not clarify that, in order to find a defendant guilty of his co-conspirator's crime, the jury must find that the crime was done in furtherance of the charged conspiracy. This challenge is frivolous. When responding to the jury's inquiry, the court spoke of "the " conspiracy. The use of this article refers back to the overall conspiracy charged in count one, and in no way suggests that the jury could find the defendant guilty of a crime committed in furtherance of some other conspiracy.
 
 
 24
 Finally, Uriel argues that the government's burden was reduced because the court failed to say that the crime must be "reasonably" unforeseeable to a defendant. If anything, by omitting the requirement of reasonableness, the court may have increased the government's burden by shifting the jury's focus to the question of whether a defendant actually did not foresee the use of a weapon, notwithstanding that he should have foreseen its use. Uriel also argues that the court's response shifted the burden to the defendants to prove that the crime was unforeseeable. Again, Instruction 23 properly instructed the jury on the government's burden. The way the court framed its answer to the jury was a result of the way the jury had framed the question: it wanted to know when it could find a defendant innocent of vicarious liability. Thus, we find no error in the court's response to the jury's inquiry.
 
 C. FIREARM INSTRUCTION
 
 25
 Umansor-Alvarez contends that the court abused its discretion in its formulation of Instruction 53, which defined the meaning of the words "use" and "carry" as used in 18 U.S.C. § 924(c). Instruction 53 tracks the language we approved in United States v. Guy, 903 F.2d 1240, 1243 (9th Cir.1990). We affirm the district court's formulation of Instruction 53.
 
 
 26
 Umansor-Alvarez also alleges that Instruction 54, which explained the meaning of the terms "in relation to" and "during" as used in § 924(c), misstated the law because it failed to inform the jury that a defendant must have knowledge that a firearm was available to him. The degree of knowledge required by a defendant is covered by Instruction 52, which stated that, in order for a defendant to be found guilty of using a firearm in violation of § 924(c), the jury must find that "the defendant knowingly used or carried, or aided and abetted or caused the use and carrying of" the weapon. Instruction 54 was proper.
 
 D. DISTRIBUTION INSTRUCTION
 
 27
 Instruction 28 defined the words "distribute" and "deliver" in relation to the possession and distribution counts. The court told the jury that "deliver" means "the actual, constructive, or attempted transfer" of a narcotic, whether or not there "exists an agency relationship between the persons involved." Umansor-Alvarez objects to the instruction on the ground that the average juror would not understand the words "constructive" or "agency." No juror, however, asked for clarification. So too, instructions 36, 37, 70, and 71, which dealt with the four specific possession charges against Umansor-Alvarez, simply and succinctly informed the jury of the elements of possession. We affirm.
 
 E. CONSPIRACY INSTRUCTIONS
 
 28
 Umansor-Alvarez challenges all of the court's instructions regarding the charged conspiracy. First, he challenges the last paragraph of the multiple conspiracy Instruction 24, which stated that "a single conspiracy may involve several sub-agreements or sub-groups of co-conspirators." Umansor-Alvarez argues that this instruction allowed the jury to find the existence of a single conspiracy notwithstanding that the government had proved only the existence of several similar conspiracies.
 
 
 29
 Instruction 21 clarified that in order to find a single conspiracy, the jury must find that at least two defendants "met, [and] discussed matters of common interest ... or perhaps helped one another." In addition, the court told the jury that it must find that there was a "joint" plan among at least two defendants. In regard to membership, Instruction 21 stated that in order to find that a defendant was a member of the single conspiracy, the jury must find beyond a reasonable doubt that the defendant joined the conspiracy previously described while "knowing of the unlawful plan and intending to help carry it out." Taken together, these two instructions clarify that the jury had to find some relationship between various conspiracies before it could find a single conspiracy. See, e.g., United States v. Zemek, 634 F.2d 1159, 1167 (9th Cir.1980), cert. denied, 450 U.S. 916 (1981).
 
 
 30
 Next, Umansor-Alvarez argues that Instruction 22, which concerned participation in a conspiracy failed to tell the jury that the object of the conspiracy must be unlawful. Instruction 21, however, informed the jury that in order to find a defendant guilty, it must find that "he or she joined the conspiracy and did so knowing of the unlawful plan and intending to help carry it out." This challenge is frivolous.
 
 
 31
 Finally, Umansor-Alvarez objects to Instruction 42, which defined the meaning of the word "facilitate" in relation to 21 U.S.C. § 843(b). Section 843(b) prohibits the use of a "communication facility" to facilitate the commission of a felony. The court told the jury that the word "facilitate" was to be given its common and ordinary meaning, gave the jury a dictionary definition of the word, and then placed the word in context by making reference to the use of a telephone to "facilitate" a crime. Although Umansor-Alvarez contends the reference to a telephone improperly "distracted" the jury. He does not say how. We thus affirm.
 
 V. Sufficiency of Evidence
 
 32
 Appellants challenge the sufficiency of the evidence for nearly all their convictions. We must review the evidence in the light most favorable to the government and decide whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. United States v. Bishop, 959 F.2d 820, 829 (9th Cir.1992).
 
 A. CONSPIRACY CONVICTIONS
 
 33
 Appellants Barron, Uriel, Ornelas-Martinez, Epifanio Gonzalez-Castro ("Gonzales-Castro"), Victor, Roberto Herrera-Robles ("Herrera-Robles"), Angulo-Lopez, Jose, and Meras argue that the government proved the existence of multiple conspiracies rather than a single conspiracy. We consider the following factors in determining whether the evidence supports a finding of a single conspiracy: the nature of the scheme; the identity of the participants; the quality, frequency and duration of each conspirator's transactions; and the commonality of time and goals. United States v. Bibbero, 749 F.2d 581, 587 (9th Cir.1984), cert. denied, 471 U.S. 1103 (1985); see also Zemek, 634 F.2d at 1168.
 
 
 34
 Based on the above factors, we conclude that there was sufficient evidence of a single conspiracy. Although loosely organized, there was evidence that this was a large single distribution network, headed by Barron, which employed Uriel and Angulo-Lopez as alternative suppliers. "[T]he fact that appellants may have competed with each other for the [distributor's] patronage did not make them any less interested in maintaining the overall distribution network." United States v. Arbelaez, 719 F.2d 1453 (9th Cir.1983), cert. denied, 467 U.S. 1255 (1984). Appellants had on-going business relations; Angulo-Lopez and Uriel went to each other's aid when one of them had insufficient supplies. (12 RT 16-20, 74-77, 137-39) There was evidence that Meras (2 RT 202-06), Victor, Jose, (19 RT 135-42), Ornelas-Martinez (12 RT at 228-238, 14 RT 20-26), Herrera-Robles, and Gonzalez-Castro (20 RT 9-12) were supplied drugs by Uriel. Most of these appellants had a least a slight connection to Angulo-Lopez and Barron. Finally, there is ample evidence that the appellants worked together for the success of the drug organization.
 
 
 35
 Jose is the only appellant who argues that the evidence was insufficient to establish his membership in the conspiracy. Once the existence of a single conspiracy is established, even a "slight connection" is sufficient to find that a defendant was part of the conspiracy. Bibbero, 749 F.2d at 587. "It is not necessary for the government to prove that the appellants knew the identity and role of each of the co-conspirators or the details of the operations or any particular plan." United States v. Hernandez, 608 F.2d 741, 748 n. 5 (9th Cir.1979). It is sufficient to show that each defendant knew or had reason to know of the scope of the conspiracy and that each defendant had reason to believe that his own benefits were dependent upon the success of the entire venture. Bibbero, 749 F.2d at 588.
 
 
 36
 There was sufficient evidence to sustain a finding that Jose was a member of the conspiracy. Although he had a minimal role, he worked closely with his brother Uriel, who headed the Castaneda family operation. (11 RT 205-06, 14 RT 116-25, 19 RT 135-42, 159-61) In addition, although his financial benefits were relatively small, Jose had reason to believe that they depended on the success of the operation. See Arbelaez, 719 F.2d at 1458. We affirm appellants' conspiracy convictions.
 
 B. POSSESSION AND DISTRIBUTION COUNTS
 
 37
 Barron argues that the evidence was insufficient to convict him under Pinkerton v. United States, 328 U.S. 640, 647-48 (1946), of counts 19 and 20, which charged possession of cocaine and heroin. These counts stemmed from the government's seizure of drugs at Uriel's stash houses in Lacey, Washington. Barron contends he had no knowledge of these locations.
 
 
 38
 Although Pinkerton requires that the substantive crime itself be foreseeable, it does not require that all the details of that crime be foreseeable. United States v. Lucas, 932 F.2d 1210, at 1219-20 (8th Cir.1991). It is reasonable to infer that, as the ringleader of the conspiracy, Barron foresaw that his major suppliers would possess drugs and store them at various locations. Moreover, there was evidence that these specific possession offenses were directly tied to Barron. Shortly before the drugs in Lacey were seized, Barron had made arrangements with Uriel Castaneda to purchase cocaine and heroin (5 RT at 217-21, 6 RT 25-29), and the evidence suggests that these drugs were located at the residences searched. We affirm Barron's two convictions.
 
 
 39
 Uriel argues that there was insufficient evidence to convict him of two counts of distribution of heroin (count 12 and 41) because the only evidence submitted was his own uncorroborated admission, which was obtained through the wiretap on his phone. The corroboration requirement only applies to admissions made by a defendant to law enforcement officials or while in confinement. United States v. Lopez-Alvarez, 970 F.2d 583, 589 (9th Cir.), cert. denied, 113 S.Ct. 504 (1992). The convictions are affirmed.
 
 C. TELECOMMUNICATION CONVICTIONS
 
 40
 Jose argues that there was insufficient evidence to convict him of two counts of using a telephone to facilitate a drug trafficking crime because the government failed to prove the existence of the predicate conspiracy. We already have resolved this issue. In addition, Jose contends that there was insufficient evidence that his intercepted conversations facilitated the goals of the conspiracy. Count 38 concerned a conversation between himself and another individual about death threats against the Castaneda family during which he explained how he had once resolved such a problem. Count 60 involved an intercepted call between Jose and Uriel in which Uriel discussed the recent drug arrest of Angulo-Lopez and the need for Jose to "calm" Gonzalez-Castro down since Angulo-Lopez might decide to talk. (19 RT at 138) The jury could reasonably infer that both calls concerned Jose's affirmative attempts to avert or resolve problems that could hinder the drug operation. We affirm these convictions.
 
 VI. SENTENCING
 
 41
 Appellants raise a number of sentencing issues. A district court must find by a preponderance of the evidence that the facts support an upward adjustment. United States v. Restrepo, 946 F.2d 654, 661 (9th Cir.1991) (en banc), cert. denied, 112 S.Ct. 1564 (1992). The district court's factual determinations are reviewed for clear error, but its legal interpretations of the Sentencing Guidelines are reviewed de novo. United States v. Wilson, 900 F.2d 1350, 1355 (9th Cir.1990).
 
 A. CALCULATION OF QUANTITY
 
 42
 Pursuant to U.S.S.G. § 3D1.2(d), all counts charging drug-related offenses and offenses involving use of a communications system for drug business are grouped together. When a defendant has been convicted of conspiracy to distribute drugs, the court will attribute to a defendant the quantity of drugs which he should have reasonably foreseen would be involved in the operation, regardless of whether that amount was specified in the indictment. See U.S.S.G. § 1B1.3, commentary n. 1.
 
 
 43
 Angulo-Lopez's, Uriel's and Barron's pre-sentence reports stated that the amount of drugs seized in this case was 12 kilograms of heroin, which required an offense level of 36. Based on the testimony at trial, the pre-sentence reports stated that an additional 150 kilos of cocaine were involved in the distribution scheme, and recommended that the base offense level should be 38. The district court accepted the recommendations of the pre-sentence reports. Further adjustments were made for the appellants' leadership roles in the offense; these adjustments are not appealed.
 
 
 44
 The three appellants contest the district court's findings as to the amount of drugs foreseeable to them on several grounds. First, they argue that the district court erred in using a test of foreseeability rather than actual knowledge because the evidence in support of the conspiracy conviction was insufficient. The sufficiency of the evidence has already been discussed. The district court properly employed a test of foreseeability when evaluating the quantity of drugs to be assigned to each appellant.
 
 
 45
 Second, Uriel and Angulo-Lopez challenge the court's factual findings. Uriel essentially challenges the court's finding that Angulo-Lopez's drugs should be attributed to him. During the trial, there was testimony that at least four separate 50-kilogram shipments of cocaine and heroin connected to Uriel had been shipped to Angulo-Lopez, (Uriel PRS at 4) that Uriel had supplied Angulo-Lopez with large amounts of drugs on two occasions, and that Uriel referred his own distributors to Angulo-Lopez when he could not supply them (18 RT 103, 13 RT 43-44). In short, a close business relationship existed between Angulo-Lopez and Uriel. The evidence supports the court's attribution of Angulo-Lopez's drug amounts to Uriel.
 
 
 46
 Angulo-Lopez challenges the finding that the additional 30 kilograms of heroin and 150 kilograms of cocaine were foreseeable to him. What Angulo-Lopez is actually challenging, however, is the district court's evaluation of the credibility of Jesusa Gallagher, his girlfriend. Although a defendant at sentencing may introduce evidence concerning credibility, it is well settled that it up to the district court to evaluate the weight it will give to a witness' testimony. Even after hearing vague arguments from Angulo-Lopez about Gallager's motive to lie, the court explicitly found her testimony credible. (ST at 40) In addition, the court relied on the testimony of other witnesses who received "multi-kilograms" of cocaine from Angulo-Lopez and considered that (ST at 38) the government had seized 39 empty kilogram wrappers (ST at 37). The district court's finding in regard to Angulo-Lopez is affirmed.
 
 B. UPWARD ADJUSTMENT FOR OBSTRUCTION
 
 47
 Ornelas-Martinez challenges his two-point upward adjustment for obstruction of justice. Since Ornelas-Martinez did not challenge the adjustment at sentencing, (S.T. at 181) the court's findings of fact are reviewed for plain error. United States v. Bosch, 951 F.2d 1546, 1548 (9th Cir.1991).
 
 
 48
 Section 3C1.1 provides for a two-point upward adjustment if "the defendant wilfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense[.]" Section 3C1.1 applies to "attempted" obstruction as well as actual obstruction. United States v. Baker, 894 F.2d 1083, 1084 (9th Cir.1990). See also United States v. Morales, 977 F.2d 1330, 1331 (9th Cir.1992), cert. denied, 113 S.Ct. 1399 (1993).
 
 
 49
 Ornelas-Martinez does not dispute that at the time of his arrest he gave a false name and that his use of a false name made it difficult for pre-trial services to obtain his prior criminal record. In this situation, the use of an alias qualifies for an upward adjustment under § 3C1.1. Application note 4(a). So too, a defendant may warrant an upward departure if he provides "materially" false information to a judge or magistrate or if he commits perjury. Application Note 3(b)-(f). Ornelas-Martinez does not deny that he committed perjury when he signed a sworn financial affidavit using the same alias. (S.T. at 179-80). The upward adjustment is affirmed.
 
 C. STATEMENT OF REASONS
 
 50
 Herrera-Robles was assigned an offense base level of 36 and a criminal history category of I, which resulted in an imprisonment range of 188 to 235 months. The district court imposed a sentence of 210 months. (CR 755) Herrera-Robles argues that his sentence must be vacated because the district court failed to make any findings in open court about his criminal history category and hence the court failed to justify his mid-range sentence. The question of whether a sentencing court adequately explained its reasons for a sentence is a question of law and is reviewed de novo. United States v. Upshaw, 918 F.2d 789, 792 (9th Cir.1990), cert. denied, 111 S.Ct. 1335 (1991). Since Herrera-Robles failed to raise his sentencing issue below, however, his sentence will be vacated only if the district court's alleged failure to state its reasons amounts to plain error. Bosch, 951 F.2d at 1548.
 
 
 51
 In Upshaw, we held that 18 U.S.C. § 3553(c) requires the sentencing court to state its reasons for choosing a sentence within in a range in open court. 918 F.2d at 792. Upshaw further held that this statement "must include a discussion of the factors used," such as "individual consideration of background, character and conduct, as well as the systemic goals of deterrence, rehabilitation and consistency in sentencing." Id. We modified Upshaw's requirements in United States v. Johnson, 953 F.2d 1167, 1173 (9th Cir.), cert. denied, 113 S.Ct. 226 (1992), when we held that a written statement of reasons adequately met the requirements of § 3553(c).
 
 
 52
 The sentencing court's statements in open court and its written reasons met the Upshaw requirements. The court stated that on one hand it considered Herrera-Robles to be a "minor" participant in and a latecomer to the conspiracy. (ST at 153) On the other hand, the court noted that Herrera-Robles had lied during the suppression hearing and that his overall credibility was doubtful (ST at 153). In its written statement of reasons, the court specified that Herrera-Robles' criminal history category was I. In addition, in regard to the issue of consistency, the court explicitly considered each defendant's sentence in light of the sentence of his or her co-defendants. The court's oral and written statements were sufficient. Johnson, 953 F.2d at 1173. We affirm.
 
 D. UPWARD ADJUSTMENT FOR FIREARM
 
 53
 The district court awarded Herrera-Robles a two-point upward adjustment for possession of a firearm pursuant to U.S.S.G. § 2D1.1. Herrera-Robles contends that the district court's factual finding is clearly erroneous. The district court based the adjustment on its finding that Herrera-Robles lived with Angulo-Lopez at the residence where the weapon was found, and on the fact that the pre-sentence report indicated that documents were found in Herrera-Robles' name at the California Street address which tied him to the weapon during the relevant time period. (Herrera-Robles PSR at 16) We affirm.
 
 E. CONSECUTIVE SENTENCES
 
 54
 Meras and Angulo-Lopez each were convicted of five counts and Uriel Castaneda was convicted of seven counts of carrying a firearm in relation to a drug trafficking crime. The district court sentenced appellants to five years for each conviction and ordered that the sentences be served consecutively.
 
 
 55
 Appellants argue that because their liability for the firearm convictions was based on Pinkerton, these consecutive sentences violate the Eighth Amendment. This court allows a conviction under § 924(c) to be based on Pinkerton. United States v. Johnson, 886 F.2d 1120, 1123 (9th Cir.1989), cert. denied, 494 U.S. 1089 (1990). Section 924(c)(1) provides that no sentence imposed under the statute shall "run concurrently with any other term of imprisonment." This court has not recognized an exception to this mandate when there are multiple violations of § 924(c). United States v. Fontanilla, 849 F.2d 1257, 1258-59 (9th Cir.1988). Appellants' challenge fails.
 
 
 56
 Second, the three appellants argue that only one five year sentence should be imposed since the predicate offense for the firearm charge was the single conspiracy count. Thus, the crux of their challenge is not the court's consecutive sentences, but the government's initial charging decision. Without commenting on the propriety of the government's charging decision, we hold that each firearm count was properly tied to a separate predicate offense. United States v. Smith, 924 F.2d 889, 894 (9th Cir.1991). Although appellants were charged with the same predicate offense several times, each stemmed from a distinct set of facts. We affirm.
 
 F. DISPARITY
 
 57
 In addition to her sentence of 25 years for the firearm counts, Meras received a guideline sentence of 235 months. In addition to Uriel Castaneda's sentence of 35 years for the seven firearm counts, he was sentenced to an additional 360 months under the guidelines. Appellants argue that their sentences are improperly disproportionate to the sentences of Leticia Castaneda, who was convicted of seven counts of violating § 924(c) and received a sentence for time served, and Jose Castaneda, who was convicted of seven counts of violating § 924(c) and received a sentence of 121 months plus five years.
 
 
 58
 Insofar as they challenge the disparity between their guideline sentences and their co-defendants' sentences, appellants' argument is foreclosed by United States v. Mejia, 953 F.2d 461, 467-68 (9th Cir.1991), cert. denied, 112 S.Ct. 1983 (1992). "[S]entencing disparity among co-defendants is not, by itself, sufficient ground for attacking an otherwise proper sentence under the Guidelines." Id. at 468. The same is true of their challenge to the disparity that resulted in regard to the statutory minimum. United States v. Garrett, 680 F.2d 650, 652 (9th Cir.1982).
 
 
 59
 With respect to their challenge to their own statutory sentences, this court will not engage in review unless constitutional concerns are implicated. United States v. Catabran, 884 F.2d 1288, 1289 (9th Cir.1989) (per curiam). That is not the situation here. Indeed, the court found that Uriel Castaneda's case "is precisely the kind of case that the mandatory minimums were designed to cover." (ST at 110) Meras does not make a challenge to her guideline sentence.
 
 
 60
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 This opinion refers to members of the Castaneda family by their first name in order to prevent confusion